UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:19-cv-422-MOC-DSC

| | |
|---|---|
| JAMES A. ADAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| BUCKEYE FIRE EQUIPMENT CO., ) | |
| ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on a Motion for Summary Judgment filed by Defendant Buckeye Fire Equipment Co. (Doc. No. 18). The Court held a hearing on the motion on February 24, 2021.

## I. BACKGROUND AND UNDISPUTED FACTS

Plaintiff James A. Adams was employed as a Line Worker at Defendant's Kings Mountain Plant from July 2018 until May 2019, when he was terminated for absenteeism. Plaintiff filed this action through counsel on August 27, 2019, alleging that Defendant interfered with his rights under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, et seq. ("FMLA"), and retaliated against his attempted exercise of his FMLA rights. (Doc. No. 1).

On November 15, 2019, Defendant filed a motion to dismiss, arguing that Plaintiff's claims fail because he was not an eligible employee under the FMLA. (Doc. No. 4). Specifically, Defendant argued that Plaintiff is not an eligible employee because his employment began less than twelve months before he requested FMLA leave. Defendant also argued that Plaintiff cannot rely on an estoppel theory as to his FMLA claims. On December 31, 2019, this Court denied Defendant's motion to dismiss.

The parties thereafter commenced discovery. Defendant took Plaintiff's deposition on December 7, 2020. Defendant also took the deposition of Plaintiff's physician, Yves P. Boudreau, on December 7, 2020. Plaintiff deposed two of Defendant's employees, Gerald Culp and Lisa Teasley, on December 8, 2020. The parties each served Requests for Admission, Interrogatories, and Requests for Production of Documents, and responses were served thereafter. Defendant filed its summary judgment motion on January 15, 2021, Plaintiff filed his response on January 29, 2021, and Defendant filed a Reply on February 5, 2021.

Defendant Buckeye is in the business of manufacturing fire protection products. (See Answer at ¶ 7, Doc. No. 10). Defendant hired Plaintiff in August 2018 as a fill line assembly worker. (See Adams at 25:12–15; Teasley at 34:1–10; Culp at 41:19). In that position, Plaintiff was responsible for physically taking fire extinguisher cylinders off of one line, putting a pin and tie on them, and placing the extinguishers on a different line. (See Adams at 25:21–26:11; Culp at 76:14–18).

Plaintiff's shift started at 5:00 a.m. (See Adams at 96:8–10). Immediately after being hired, Plaintiff began having attendance issues, accruing eight "occurrences" in the four months ending in December 2018. (Teasley at 53:3–4).[1] Plaintiff's attendance issues got worse in 2019, with repeated absences, leaving work early, and reporting to work late. (See Dep. Exs. 7 9). By April 12, 2019, Plaintiff had more than ten occurrences just for the calendar year 2019 (not counting three allowed personal days that he had already exhausted) and had received multiple

---

[1] An "occurrence" under Buckeye's policies is an unexcused absence or four report late/leave earlies. (See Teasley at 52:6–10). Buckeye maintains an attendance policy for its employees, with progressive discipline as employees accrue additional occurrences. (Teasley at 40:17–41:4; Dep. Ex. 13 at 9–10). Anything beyond ten occurrences "will result in termination of employment." (Dep. Ex. 13 at 10).

verbal and written warnings for attendance. (See Teasley at 58:10–13; 61:11–62:4; 67:24–70:2; Culp 41:14–20; Dep. Exs. 7–9). After showing up late to work on Friday, April 12, 2019, Plaintiff was suspended for three days–Monday, April 15, 2019 through Wednesday, April 17, 2019. (See Teasley at 69:15–71:9 and Dep. Ex. 10).

On the evening of April 17, while on suspension, Plaintiff fractured his hand outside of work. (See Adams at 29:5–30:14). Following his injury, Plaintiff's hand was in a splint, he was having throbbing pain, and he physically could not perform his job. (See Adams at 30:15–24; 31:10–12; 41:4–8; 123:24–124:2). Plaintiff did not report to work at the start of his shift on his first scheduled day back at work on April 18 or on April 19. (See Teasley at 72:9–20; Culp at 76:14–77:11; Adams at 42:1–3). In the afternoon on April 19, 2019, near the time his shift would have ended that day, Plaintiff showed up at work and informed his immediate supervisor, Lisa Teasley, and the plant manager, Gerald Culp, that he had broken his hand and could not work.[2] (See at Culp 49:7–51:18; Teasley at 73:4–7). Leave under the FMLA was never discussed, and it is undisputed that Plaintiff was not an "eligible employee" under the FMLA because he had not been employed for 12 months, having been hired in August 2018. (See Adams at 121:24–122:11; Pl.'s Resp. to RA 6 ("It is admitted that Plaintiff was employed by Defendant for a period of less than 12 months at the time he suffered the injury . . . .")).

Plaintiff did not work on either April 18 or April 19. (See Adams at 41:4–8; 42:1–3; Teasley at 72:9–74:10; Culp at 51:1–18). Both days were further unexcused absences and

---

[2] Plaintiff's supervisor, Lisa Teasley, testified that Plaintiff did not show up to Buckeye or contact her until Friday, April 19, 2019, the second scheduled day after his suspension ended. (Teasley 72:9–74:10). Plaintiff claims that the discussion occurred on Thursday, April 18, albeit sometime well after his shift would have started. (Adams 34:10–36:2). This factual difference is not material as to whether Plaintiff can succeed on his claims, namely whether Plaintiff can show detrimental reliance.

3

attendance occurrences for Plaintiff. (See Teasley at 75:8–10; Culp at 77:5–11). After Plaintiff left on April 19, Teasley recommended Plaintiff's termination to Culp for his attendance problems. (See Teasley at 75:25–76:9). The written documentation of Plaintiff's termination was completed early the following week, with an effective termination date of April 22, 2019. (See Culp 52:24–25; Teasley at 81:12–24; Dep. Ex. 15).

Plaintiff did not show up to work on April 22. (Adams 96:15–97:15). Later that morning, Adams had an appointment with an orthopedic physician, who removed the splint and placed Plaintiff's hand in a stiff, fiberglass cast–which he was to be in for approximately six weeks–that completely immobilized his hand and two of his fingers. (Adams at 124:3-7; 132:18–25; Boudreau at 9:24–10:22). As with the splint, Plaintiff could not perform his job with the cast on. (See Adams at 43:18–44:3; 50:2–11; 51:2–11; see also Boudreau at 11:22–13:4 (specifying that Adams should not return to work for five weeks) 42:8–17 (describing limitations with cast).

Further, due to the severity of the pain that Plaintiff was experiencing, Plaintiff was prescribed Vicodin, which he was taking every 6 hours for his pain. (See Adams at 48:10–49:17; 91:4–16; Boudreau at 41:4–25). According to Plaintiff, following his doctor visit, Plaintiff went to Buckeye later on April 22 to speak with Carolyn Lanier, Buckeye's former Human Resources Manager, with the intention of getting some FMLA paperwork to "save [his] job." (See Adams at 44:19–45:6; 46:9–17; 49:18–50:1). Further according to Plaintiff, Lanier, apparently not aware that his supervisors had already decided to terminate Plaintiff, mistakenly told Plaintiff that he was eligible under the FMLA because of his hours and gave him some FMLA paperwork, specifically, a certification for Plaintiff to have his physician complete and return to Defendant.

4

(See Adams at 46:1–8; 79:11–81:8). There is no evidence that FMLA leave for Plaintiff was ever approved or that a request for leave was actually granted.

Further, Plaintiff's testimony indicated that he understood that FMLA leave had not been approved and that it may not "go through." (See, e.g., Adams at 57:3–10 ("stating that Lanier mentioned short term disability payments "if [his] FMLA go through [sic]"); 60:18–24 (calling to "make sure everything went through" and told about prior termination).[3]

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3.

---

[3] Plaintiff did not drop off the paperwork with his physician until a full week after he purportedly received it from Ms. Lanier. (See Adams 94:4–18). Further, to the extent the certification was returned at all–there is no fax confirmation and Buckeye was not able to locate any such form in its records–the form wasn't signed until May 9, 2019, and therefore could not have been returned before then. (See Dep. Ex. 2). As signed, the certification stated that Plaintiff was unable to perform "all job duties." (Dep. Ex. 2).

5

The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

### III. DISCUSSION

To state a claim for unlawful interference with an employee's FMLA benefits, the plaintiff must plausibly allege that: "(1) [he] was an eligible employee; (2) [his] employer was covered by the statute; (3) [he] was entitled to leave under the FMLA; (4) [he] gave [his] employer adequate notice of [his] intention to take leave; and (5) the employer denied [his] FMLA benefits to which [he] was entitled." Laing v. Fed. Express Corp., No. 3:10-CV-00242, 2011 WL 6072028, at *4 (W.D.N.C. Oct. 13, 2011) (quoting Rodriguez v. Smithfield Packing Co., 545 F. Supp. 2d 508, 516 (D. Md. 2008)). To state a claim for FMLA retaliation, the plaintiff must plausibly allege that "(1) he engaged in protected activity; (2) his employer took an adverse action against him; and (3) a causal connection exists between the protected activity and the adverse action. See Jacobs v. UPS, Inc., No. 3:15CV381, 2016 WL 8192993, at *2 (W.D.N.C. Dec. 5, 2016) (citing Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 551 (4th Cir. 2006)). As this court has previously held, a plaintiff who is not an eligible employee

under the FMLA cannot meet the first element of a retaliation claim i.e., that he engaged in protected activity–and therefore cannot maintain such a claim. See id. at *2. Thus, a required element for both an interference claim and a retaliation claim is that the plaintiff be an eligible employee under the FMLA. Among other criteria, to be an "eligible employee," a person must have been employed for "at least 12 months by the employer with respect to whom leave is requested." 29 U.S.C. § 2611(2)(A).

In his Complaint, Plaintiff never alleged that he was an "eligible employee," and he has admitted that he was not employed by Defendant for twelve months. (See Complaint at ¶¶ 8, 30 (pursuing estoppel theory and alleging that Plaintiff was hired in July 2018); Pl.'s Resp. to RA 6 ("It is admitted that Plaintiff was employed by Defendant for a period of less than 12 months at the time he suffered the injury . . . ."); Adams at 110:24–111:1). Therefore, Defendant is entitled to summary judgment on Plaintiff's claims.

Plaintiff attempts to get around the eligible employee requirement by relying on an equitable estoppel theory. (See Complaint at ¶ 30 (alleging that "Defendant's representations to Plaintiff that he was eligible for leave under the FMLA, which Plaintiff reasonably relied on, estop Defendant from denying Plaintiff's eligibility.")). Significantly, the Fourth Circuit has never applied or adopted the doctrine in the context of FMLA claims. Given that lack of authority from the Fourth Circuit, this Court declines to apply an estoppel theory here. See Pennant v. Convergys Corp., 368 F. Supp. 2d 1307, 1313 (S.D. Fla. 2005) (declining to apply equitable estoppel in an FMLA case because of the absence of a directive from the Eleventh Circuit). However, even were this Court to apply such theory, Plaintiff's claims would still not survive Defendant's summary judgment motion.

7

Equitable estoppel is applicable "when one party has made a misleading representation to another party and the other has reasonably relied to his detriment on that representation." Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co., 118 F.3d 1018, 1027 (4th Cir. 1997) (quoting Black v. TIC Inv. Corp., 900 F.2d 112, 115 (7th Cir. 1990)); see also Schmidt v. Town of Cheverly, No. GJH-13-3282, 2014 WL 4799039, at *6 (D. Md. Sept. 25, 2014) (applying the same equitable estoppel standard in the context of the FMLA).

Detrimental reliance requires that a party have relied "in such a manner as to change his position for the worse." Heckler v. Cmty. Health Servs., 467 U.S. 51, 59 (1984). Further, "that reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading." Id.

One court in this circuit has noted that "the critical inquiry is whether or not the employee would have taken leave in the absence of the misrepresentation concerning FMLA leave." Moss v. City of Abbeville, 740 F. Supp. 2d 738, 758 (D.S.C. 2010) (citing Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 90 (2002)). Where an employee fails to adequately show that "she could have returned to work earlier or that she would have structured her leave differently had her employer properly informed her of her FMLA eligibility" courts have concluded that the employee cannot show detrimental reliance and therefore cannot prevail on an estoppel theory. Id. (citing Weidner v. Unity Health Plans Ins. Corp., 606 F. Supp. 2d 949, 958 (W.D. Wis. 2009); Miller v. Personal-Touch of Va., Inc., 342 F. Supp. 2d 499, 515 (E.D. Va. 2004)).

Specifically, detrimental reliance cannot be found where the employee was already unable to work and therefore could not have changed positions based on any representation as to eligibility for leave. See Baker v. Hunter Douglas, Inc., 270 F. App'x 159, 164 (3d Cir. 2008) (finding plaintiff could not show detrimental reliance because she was unable to perform the

8

essential functions of her job and, therefore, she could not show that she could have returned to work absent her employer's statements); Schmidt, 2014 WL 4799039, at *7 (plaintiff could not succeed on an estoppel theory because he acknowledged that he was not able to work and therefore could not have relied on representations of FMLA eligibility in missing work); Mott v. Office Depot, Inc., Civ. No. 07-6370-HO, 2009 WL 1662906, at *9 (D. Or. June 12, 2009) (holding that employee who had not worked for defendant for at least 12 months could not prevail on an estoppel theory, in part, because she would have taken time off even if she was not entitled to FMLA leave); Myers v. Tursso Co., No. C 07-3016-MWB, 2008 WL 474201, at *24 (N.D. Iowa Feb. 19, 2008) (employee could not show detrimental reliance where he had "no choice but to be absent" and therefore "his termination arising from those absences was not a detriment from reliance on misrepresentations about his FMLA eligibility").

Here, Plaintiff cannot meet his burden of proving detrimental reliance. First, by Plaintiff's own admission, FMLA or his eligibility thereunder was not mentioned until his alleged conversation with Carolyn Lanier on April 22. (See Adams 121:24 122:8). By that time, he had already broken his hand and had already taken a leave of absence, missing multiple days of work because he could not perform his job. (See Adams at 30:15–24; 31:10–12; 41:4–8; 42:1–3; 123:24–124:2; Teasley at 72:9–74:10; Culp at 51:1–18). Thus, there is no connection between Plaintiff's leave of absence and any representation concerning FMLA eligibility. See Mott, 2009 WL 1662906, at *9 (holding that employee could not have detrimentally relied on an alleged representation regarding the FMLA because she first took leave before being given the form containing the alleged representation).

Further, notwithstanding the causal disconnect, by the time that the alleged representation was made, Plaintiff had been placed in a stiff cast (which would remain for 6 weeks), was

9

regularly taking prescription pain medicine, and still physically could not perform his job. (See Adams at 43:13–14; 48:10–49:17; 91:4–16; 124:3-7; 132:18–25; Boudreau at 9:24–10:22; 41:4 25). In his deposition, Plaintiff repeatedly testified to his inability to work:

> Q. If Ms. Lanier had not given you any paperwork and had told you on April 22nd that you were not eligible under the FMLA, you still couldn't have performed your job after April 22nd because you had this cast on your hand, right?
> MR. HJELT: Objection.
> THE WITNESS: That's why I filed for FMLA paperwork, because I couldn't perform my job. Not with the cast. And it wasn't just perform. They wasn't gonna give me no work.
> . . . .
> Q. Well, let me rephrase it. Regardless of anything, after April 22nd you could not perform your job because you had a broken hand and a cast on your hand, right?
> MR. HJELT: Objection.
> THE WITNESS: I couldn't perform my job because I had a broken hand--I couldn't perform my job because I was written out and, plus, I had a broken hand and, plus, they wouldn't give me no work. And she would have--yeah.

(Adams at 50:2–11; 51:1–11; see also Adams 43:18–25 (stating that after he had his cast "I know I can't work"); 63:5–19 (stating that he told a co-worker that he "couldn't work"); Adams 96:8–17 (stating as of April 22 "I couldn't work anyway")). Thus, regardless of the alleged representation concerning his eligibility, Plaintiff, by his own admissions, could not perform his job and could not have relied on any purported representations about FMLA.[4]

That Plaintiff could not, or at least reasonably could not, have relied on the purported FMLA representations in missing work is further evidenced by Plaintiff's understanding that his leave had not been approved and that it was not a given that FMLA leave would in fact be

---

[4] As Defendant notes, courts have applied the equitable estoppel doctrine in situations where an ineligible employee requests leave in advance, for example to undergo surgery, the employer erroneously grants the leave, and the employee could have rescheduled the surgery or pursued other medical alternatives if she had known she was not eligible. See, e.g., Minard v. ITC Deltacom Commc'ns, Inc., 447 F.3d 352 (5th Cir. 2006). Such is simply not the case here.

approved. (See, e.g., Adams 57:3–10 ("stating that Lanier mentioned short term disability payments "if [his] FMLA go through [sic]"); 60:18–24 (calling to "make sure everything went through")). According to Plaintiff, he was merely told that he was eligible under the FMLA and given a form to complete and return, and only after he had already been absent from work and could not return to work. Plaintiff's deposition testimony supports the notion that Plaintiff really did not do anything at all in reliance on the purported FMLA representations except literally have the forms filled out:

> Q. Okay. What did you do in reliance on Ms. Lanier's alleged statements of your eligibility under the FMLA?
> MR. HJELT: Objection.
> THE WITNESS: I went and filled the form out.
> . . . .
> Q. All right. You filled out a form. What else?
> A. That was it. That's all I could do is get the form filled out.

(See Adams 125:4–9; 125:15–18). This is not detrimental reliance. Having to fill out forms for leave that you are already not eligible to receive does not warrant the exceptional relief of equitable estoppel that the Plaintiff seeks in this case.

Additionally, Plaintiff cannot succeed in showing that any reliance was "reasonable" because Plaintiff was (or should have been) well aware that he was not eligible for the FMLA as he knew he had not been working at Buckeye for the required 12-month period. Further, Buckeye's Employee Handbook, which Plaintiff would have received, specifically states that "[t]o be qualified, the employee must have worked at least (12) months with the Company . . . ." (Teasley 58:6–9 and Dep. Ex. 13). Plaintiff therefore could not have reasonably relied on any statements regarding his eligibility.

In sum, Plaintiff's FMLA interference and retaliation claims fail because he was not an "eligible employee" under the FMLA and therefore not entitled to any rights under the FMLA.

11

Furthermore, Plaintiff cannot rely on an equitable estoppel theory in order to survive summary judgment in this case. Thus, Defendant is entitled to summary judgment.

## IV. CONCLUSION

For the reasons stated herein, Defendant's Motion for Summary Judgment is granted.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Summary Judgment, (Doc. No. 18), is **GRANTED**, and this action is dismissed with prejudice.

Signed: March 17, 2021

Max O. Cogburn Jr
United States District Judge